IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-02521-CNS

EIGHTH DISTRICT ELECTRICAL PENSION FUND,
EIGHTH DISTRICT ELECTRICAL PENSION FUND ANNUITY PLAN,
EIGHTH DISTRICT ELECTRICAL BENEFIT FUND,
JEREMY ROSS,
NATIONAL ELECTRICAL BENEFIT FUND
MONTANA ELECTRICAL JOINT APPRENTICESHIP AND TRAINING TRUST FUND,
MONTANA CHAPTER, NECA,
LOCAL LABOR-MANAGEMENT COOPERATION FUND, and
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 532,

      Plaintiffs,

v.

TETER INDUSTRIES, INC. d/b/a DON'S ELECTRIC,

      Defendant.

---

# ORDER

This matter is before the Court on: (i) Plaintiffs' Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55(b) (ECF No. 9), and (ii) Plaintiffs' Status Update and Motion for Attorneys' Fees and Costs (ECF No. 17). For the reasons explained below, the Court GRANTS both motions.

## I.  BACKGROUND[1]

This case involves Plaintiffs' alleged rights to monetary contributions under the Employee Retirement Income Security Act (ERISA), the parties' Collective Bargaining Agreements (CBAs),

---

[1] The background facts in this Order are drawn from Plaintiff's Complaint (ECF No. 1). Because of the Clerk of Court's entry of default (ECF No. 7), the allegations in the complaint are deemed admitted. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

and the Labor Management Relations Act (LMRA). Nine Plaintiffs brought claims against Defendant Teter Industries, Inc. (Defendant Teter), alleging that by failing to make payments owed to Plaintiffs pursuant to the CBAs, ERISA, and LMRA, Defendant Teter has violated 29 U.S.C. § 1145 (*see* ECF No. 1, ¶ 1).

Plaintiffs include: (i) five employee benefit plans (collectively, Plaintiff Funds), (ii) Jeremy Ross, the Chair of the Delinquency Committee for three of the employee benefit plans (Plaintiff Ross), (iii) an employer association (Plaintiff NECA), (iv) a local labor-management cooperation fund (Plaintiff LMCF), and (v) a labor organization (Plaintiff Local 532) (ECF No. 1, ¶¶ 2–12). Four of the plaintiff employee benefit plans, including the three plans for which Plaintiff Ross serves as Chair, maintain principal places of administration in Denver, Colorado (*id.*, ¶¶ 2–4, 7). The one remaining plaintiff employee benefit plan maintains a principal place of administration in Maryland (*id.*, ¶ 6). Plaintiff NECA and Plaintiff Local 532 maintain principal offices of business in Montana (*id.*, ¶¶ 9, 11). Defendant Teter is a corporation organized and doing business in Montana (*id.*, ¶ 12).

Defendant Teter is a party to one or more CBAs with Local 532, and at all relevant times, Defendant Teter employed individuals who performed CBA-covered work (*id.*, ¶¶ 16–17). The Plaintiff Funds were established pursuant to the CBAs and incorporated declarations of trust (*id.*, ¶ 18).

The CBAs require Defendant Teter to make contributions to Plaintiff Funds, "which provide health, retirement, training, and other benefits to employees of contractors, such as Defendant [Teter], who are signatory to the CBAs with Plaintiff Local 532 (ECF No. 1, ¶ 19). The CBAs also require Defendant Teter to timely submit monthly reports and fringe benefit contributions to Plaintiff Funds (*id.*, ¶ 20). Contributions to Plaintiff Funds are due at the end of

each month, and payments not made by the 15th day of the following month are deemed delinquent (*id.*, ¶ 21). However, from June through October 2022,[2] Defendant Teter failed to make full contributions to Plaintiff Funds for the hours of CBA-covered work its employees performed (*id.*, ¶¶ 22, 37; *see* ECF No. 17, ¶ 2). In addition, during the same period, Defendant Teter failed to transmit to Plaintiff LCMF and Plaintiff Local 532 the work assessments deducted from the wages of CBA-covered employees (ECF No. 1, ¶¶ 31–36, 37; *see* ECF No 17, ¶ 2).

Plaintiffs' Complaint was filed on September 28, 2022, and Plaintiffs served Defendant Teter through its registered agent in Montana on October 3, 2022 (*see* ECF No. 1 at 10; ECF Nos. 4, 4-1). Defendant failed to timely answer or respond. Plaintiffs then filed a Motion for Entry of Default on October 27, 2022 (ECF No. 6). The Clerk entered default on October 28, 2022 (ECF No. 7). Plaintiffs filed their Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b) on November 21, 2022 (ECF No. 9). Upon the Court's request, Plaintiffs also filed a Status Update and Motion for Attorneys' Fees and Costs on May 30, 2023, providing a status update as to Defendant Teter's delinquency since the Motion for Default Judgment was filed, and updating their damages and fees calculations to the present (ECF No. 17).

## II.  LEGAL STANDARD AND STANDARD OF REVIEW

The Court may enter default judgment against a party that has failed to plead or otherwise defend an action brought against it. Fed. R. Civ. P. 55(b)(2). The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (internal citations omitted). "Strong policies favor resolution of disputes on their merits" and default judgment should

---

[2] As of the Complaint's filing, Plaintiffs asserted that Defendant Teter had failed to make the required monthly contributions beginning in June 2022, and that this failure was "ongoing and continuing" (ECF No. 1, ¶¶ 22, 31–36, 37). However, in their Status Update filed May 30, 2023, Plaintiffs represented that "Defendant Teter has not employed any electrical workers performing work covered under Collective Bargaining Agreements (CBAs) with Plaintiff Local 532 since the work month of October 2022. Therefore, Plaintiffs do not seek to collect any additional contributions from Defendant for months after October 2022."

be "available only when the adversary process has been halted because of an essentially unresponsive party." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (internal citations omitted).

When facing a motion for default judgment, the court must first evaluate and establish their jurisdiction. *See, e.g., Bixler v. Foster*, 596 F.3d 751, 761 (2010). To enter default judgment, a court must have both personal jurisdiction over each defaulting defendant and subject-matter jurisdiction over the action. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). The second step of the inquiry is to evaluate whether the plaintiff's pleadings support a judgment on the claims alleged. *Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted). When deciding on a motion for default judgment, courts accept all well-pleaded factual allegations in the complaint as true. *Olcott*, 372 F.3d at 1125. Undisputed facts alleged in the affidavits or exhibits are also deemed true. *Id.* at 1124.

Allegations regarding the amount of damages, however, are deemed true only to the extent they are "capable of mathematical calculation." *Marcus Food Co. v. Dipanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011); *see Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) ("[A] court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation."). Where the amount claimed is not "a liquidated sum or one capable of mathematical calculation," a court is required to hold an evidentiary hearing to determine the amount of damages. *Venable v. Haislip*, 621 F.2d 297, 300 (10th Cir. 1983); *see Marcus Food*, 671 F3d at 1171–72 (determining that the damages asserted in the complaint were sufficiently calculable to not require an evidentiary hearing).

### III. ANALYSIS

Having considered Plaintiffs' Motion for Default Judgment and attached Exhibits (ECF No. 9) and the Complaint (ECF No. 1), the Court grants Plaintiffs' Motion for Default Judgment.

#### A.  Jurisdiction

Before reaching the merits of the Plaintiffs' claims, the Court must determine whether it has subject matter jurisdiction to decide the claims and personal jurisdiction over the defendant. *Williams*, 802 F.2d at 1203.

#### 1.  Subject Matter Jurisdiction

Plaintiffs assert that the Court has subject matter jurisdiction over the action (ECF No. 9 at 3). The Court agrees. The Court has subject matter jurisdiction over an action when there is either a federal question at issue or diversity between the parties. *See* 28 U.S.C. §§ 1331–1332. 28 U.S.C. § 1331, provides, in pertinent part, that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Here, Plaintiffs bring claims under ERISA—a federal statute providing, in relevant part, that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter . . . ." 29 U.S.C. § 1132(e)(1). Additionally, Plaintiffs bring claims under the LMRA—another federal statute providing, in relevant part, that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Accordingly, Plaintiffs' claims arise out of a federal cause of action and, thus, subject matter jurisdiction exists under 28 U.S.C. § 1331, 29 U.S.C. § 1132(e)(1) and 29 U.S.C. § 185(a). *See Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F.Supp.3d 1235, 1241 (D. Colo. 2015).

## 2. Personal Jurisdiction

Plaintiffs also assert that the Court has personal jurisdiction over Defendant Teter (ECF No. 9 at 3). The Court agrees. Plaintiffs bear the burden of establishing personal jurisdiction over the defendant. *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988). However, "the plaintiff need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997). To analyze personal jurisdiction in federal court, the court must determine (1) the adequacy of the service, including "whether any applicable statute authorizes the service of process on [the] Defendant" and (2) "whether the exercise of jurisdiction comports with due process." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).

### a. Service of Process

"The Court must first address the adequacy of service in deciding whether it has personal jurisdiction over Defendant." *Reg'l Dist. Council*, 82 F.Supp.3d at 1241. Defendant Teter is a corporation incorporated in Montana (ECF No. 9, ¶ 12). Service upon a corporation may be accomplished "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Further, 29 U.S.C. § 1132(e)(2) authorizes nationwide service of process for claims under ERISA. *See Peay v. BellSouth Medical Assistance Plan*, 205 F.3d 1206, 1210 (10th Cir. 2000) ("There is no question that the last clause of § 1132(e)(2) authorizes nationwide service of process."); *see also Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1229

(10th Cir. 2006) ("Where Congress has statutorily authorized nationwide service of process, such service establishes personal jurisdiction, provided that the federal court's exercise of jurisdiction comports with Fifth Amendment due process."). Here, Plaintiffs served defendant in Montana on October 3, 2022, by leaving a copy of the summons and complaint with Defendant Teter's registered agent, Robert J. Teter (ECF No. 4). The Court therefore finds that Defendant Teter was properly served, in accordance with Federal Rule of Civil Procedure 4(h) and 29 U.S.C. § 1132(e)(2).

### b. Due Process

Second, the Court must determine whether exercising personal jurisdiction over Defendant Teter comports with due process. "[I]n a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." *Peay*, 205 F.3d at 1211. The analysis of whether the exercise of personal jurisdiction comports with due process is two-fold. *See AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). First, the Court looks to "whether the nonresident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980)). Second, "[courts] must . . . . consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *OMI Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987)).

There are two forms of personal jurisdiction that may be established through a non-resident defendant's minimum contacts with the forum state: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 126–29 (2014). General jurisdiction exists when a

nonresident defendant's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Am. Fid. Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1239 (10th Cir. 2016) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Specific jurisdiction exists when a nonresident defendant: (1) availed themselves of the forum state's laws through "'purposefully direct[ing]' [their] activities at residents of the forum" and (2) when "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472, 474 (1985) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).

Here, Plaintiff has established that the Defendant is subject to specific jurisdiction in Colorado. First, the Defendant entered into CBAs with Colorado residents governing "the terms and conditions of employment" of Colorado employees (ECF No. 1, ¶ 16). When considering contractual contacts for the purposes of establishing specific personal jurisdiction over a nonresident defendant, "[t]he typical purposeful direction analysis looks to the out-of-state defendant's 'continuing relationships and obligations with citizens of [the forum state].'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017) (quoting *Burger King*, 471 U.S. at 473). Entering into these CBAs demonstrates Defendant Teter's "continuing relationships and obligations" with Colorado citizens. *Burger King*, 471 U.S. at 473.

Second, this case "arise[s] out of" Defendant Teter's contracts with Colorado residents. *Keeton*, 465 U.S. at 774. The CBAs with Colorado labor unions are the source of this dispute, which is, essentially, a contract dispute. Therefore, because Defendant Teter availed itself of Colorado's laws through "'purposefully direct[ing] activities at" Colorado residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities," Plaintiffs

have established that the Court has specific jurisdiction over Defendant Teter. *Burger King*, 471 U.S. at 472, 474 (1985) (quoting *id.*).

Noting that Plaintiffs have established that Defendant Teter has minimum contacts with the forum, such "that [they] should reasonably anticipate being haled into court there," the Court must now analyze whether "the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *World-Wide Volkswagen Corp.*, 444 U.S. at 296; *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Industry Co.*, 480 U.S. at 109). To make this determination, the court considers:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings*, 149 F.3d at 1095 (citing *Asahi*, 480 U.S. at 113). The Court will briefly address each of these factors.

First, the burden on Defendant Teter is minimal. This case is before the Court on a motion for default judgment as Defendant Teter has entered no appearance and made no effort to litigate the case. Therefore, because Defendant Teter "has not appeared and has not asserted any argument that it will be unduly burdened by being required to litigate in this forum," the Court finds that this factor weighs in Plaintiffs' favor (i.e, in favor of exercising personal jurisdiction over Defendant Teter). *Madison v. Avery*, No. 19-cv-02779-WJM-NYW, 2021 WL 4947239, at *9 (D. Colo. Aug. 9, 2021). Second, because the CBAs and most of the Plaintiffs are in Colorado, the state has a significant interest in resolving the dispute, and the forum fits Plaintiff's interest in convenient and effective relief. *See OMI Holdings*, 149 F.3d at 1096 ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."). The CBAs at issue concern four Colorado labor unions, and Defendant Teter breached

contracts with Colorado residents. Therefore, the Court finds that the second and third factors also weigh in Plaintiffs' favor.

The fourth factor, the interstate judicial system's interest in obtaining efficient resolution, also weighs in Plaintiff's favor. If Defendant Teter were to respond in this case, and should Plaintiff need to call witnesses at trial, most of them would likely reside in Colorado. Further, "the wrong underlying the suit occurred" in Colorado. *OMI Holdings*, 149 F.3d at 1097. Fifth, and finally, "keeping this case in Colorado would not 'affect[] the substantive social policy interests of other states or foreign nations." *Madison*, 2021 WL 4947239 at *9. Therefore, the fourth and fifth factors also weigh in Plaintiffs' favor.

Pursuant to the foregoing analysis, the Court concludes that it has specific personal jurisdiction over Defendant Teter.

### B. Default Judgment

Once the Court has established jurisdiction over the matter and the defendant, it must next decide "whether the unchallenged facts constitute a legitimate cause of action," such that judgment should be entered. *Bixler*, 596 F.3d at 762 (quotation omitted). If judgment by default enters, the Court must also ascertain the amount of damages to which the plaintiff is entitled. *See Mile High Rodbusters*, 82 F.Supp.3d at 1243 (citation omitted).

#### 1. Liability

As previously mentioned, due to the entry of default, the well-pleaded facts of the complaint are deemed admitted. *Olcott*, 327 F.3d at 1125. The undisputed facts set forth by Plaintiffs in the updated affidavit of Phillip Ornelas, Delinquency Coordinator for three of the Plaintiff Funds (ECF No. 17-1, ¶ 2), are also accepted as true. *Id.* at 1124. Accepting these allegations as true, the Court finds that Plaintiffs are entitled to judgment by default because, from

10

June through October 2022, Defendant Teter failed to pay contributions and work assessments owed to Plaintiff Funds as required by the CBAs and ERISA. *See* 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.").

Mr. Ornelas's updated affidavit confirms the facts in the complaint. *See* ECF No. 17-1; *Olcott*, 327 F.3d at 1124. Defendant Teter's employees performed work covered by the CBAs between Plaintiff Local 532 and Plaintiff NECA, to which Defendant Teter is a signatory (ECF No. 17-1, ¶ 5). Defendant Teter, as a signatory, was obligated to contribute timely to Plaintiff Funds (*id.*, ¶ 6). Defendant Teter filed reports for the months of June 2022 through September 2022 indicating that it owed contributions to Plaintiffs, and it did not submit such a report for October 2022 (*id.*, ¶ 8). In any event, Defendant Teter failed to pay the contributions in full, even after Mr. Ornelas sent delinquency letters on July 29, 2022, and August 30, 2022 (*id.*, ¶¶ 8–9). As such, Defendant Teter's proven delinquency extends from the work months of June 2022 through October 2022.

Because the Court deems the well-pleaded facts of the complaint and Mr. Ornelas's affidavit as true, the Court finds that Plaintiffs have established that Defendant Teter failed to pay the required contributions as required by the CBAs and ERISA and that default judgment should be entered against Defendant Teter accordingly.

### 2. Relief

On the issue of damages owed to Plaintiffs, ERISA provides that:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce § 515 in which a judgment in favor of the plan is awarded, the court shall award the plan:
>> (A) the unpaid contributions,
>> (B) interest on the unpaid contributions,
>> (C) an amount equal to the greater of:
>>> (i) interest on the unpaid contributions, or
>>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under sub-paragraph (A),
>> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>> (E) Such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under § 6621 of the Internal Revenue Code of 1954.

29 U.S.C. § 1132(g)(2). Plaintiffs seek relief under subsections (A) through (D)—namely, unpaid contributions, interest, liquidated damages, and attorney's fees, which are mandatory. *See id.* ("the court shall award the plan"); *Mile High Rodbusters*, 82 F.Supp.3d at 1244. The Court addresses each damages category in turn.

### a. Unpaid Contributions

With respect to unpaid contributions, *see* 29 U.S.C. § 1132(g)(2)(A), Plaintiffs request contributions from June 2022 through October 2022 totaling $58,459.40 (*see* ECF No. 17-1, ¶ 8). Mr. Ornelas's calculation of unpaid contributions in the amount of $58,459.40 is current as of his updated affidavit's filing, and accounts for Defendant Teter's failure to make any payments since the complaint and motion for default judgment were filed (*see* ECF No. 9-2 at 5).

The Court thus finds that Plaintiffs have provided sufficient evidence regarding these unpaid contributions of $58,459.40. *See Mile High Rodbusters*, 82 F.Supp.3d at 1245 (citation omitted). The Court will therefore enter judgment against Defendant Teter for $58,459.40 in unpaid contributions.

### b. *Interest on Unpaid Contributions*

With respect to interest on unpaid contributions, *see* 29 U.S.C. § 1132(g)(2)(B), Plaintiffs provide evidence through Mr. Ornelas's updated affidavit that Defendant Teter owes interest on its unpaid contributions in the amount of $3,276.51 (ECF No. 17-1, ¶ 10). Because interest continued to accrue even after Defendant Teter ceased to employ any workers who performed CBA-covered work, Mr. Ornelas's interest calculation is current up to May 31, 2023 (ECF No. 17, ¶ 3).

Plaintiffs have provided the Court with undisputed proof of the amount of interest owed. Therefore, the Court will enter judgment against Defendant Teter for $3,726.51 in interest payments.

### c. *Liquidated Damages*

With respect to additional interest or liquidated damages, *see* 29 U.S.C. § 1132(g)(2)(C), Plaintiffs provide evidence through Mr. Ornelas's updated affidavit that Defendant Teter owes $7,758.98 in liquidated damages for June through October 2022 contributions as set forth in the CBAs (ECF No. 17-1, ¶ 11).

Plaintiffs have provided the Court with undisputed proof of the amount of liquidated damages owed. Therefore, the Court will enter judgment against Defendant Teter for $7,758.98 in liquidated damages.

### d. *Attorney's Fees and Costs*

ERISA requires Defendant Teter to pay Plaintiffs' reasonable attorney's fees and costs in this action. *See* 29 U.S.C. § 1132(g)(2)(D); *Mile High Rodbusters*, 82 F.Supp.3d at 1244.

To determine a reasonable fee award, the Court conducts a lodestar calculation as set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). A lodestar calculation requires multiplying the

number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate. *Mile High Rodbusters*, 82 F.Supp.3d at 1245 (citing *Hensley,* 461 U.S. at 433). To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment. *Id.* (citing *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.,* 157 F.3d 1243, 1250 (10th Cir. 1998)). Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Id.* (citing *Phelps v. Hamilton,* 120 F.3d 1126, 1131 (10th Cir.1997)).

"Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Mile High Rodbusters*, 82 F.Supp.3d at 1245–46 (quoting *Case,* 157 F.3d at 1250). In determining what is a reasonable time in which to perform a given task, an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) the potential duplication of services caused by the presence of multiple attorneys when one would suffice. *Id.* at 1246 (citations and quotation marks omitted). Counsel must make a good faith effort to exclude hours or costs that are "excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S. at 434. And ultimately, counsel seeking an award of attorney's fees must demonstrate that it exercised proper billing judgment, and that the amount it seeks is reasonable. *See Mile High Rodbusters*, 82 F.Supp.3d at 1246 (citation omitted).

Notwithstanding the foregoing standards, while the starting point for any calculation of a reasonable attorney's fee generally is the "lodestar," *id.* at 433, the Court is not required to reach a lodestar determination in every instance, and it may simply accept or reduce a fee request within its discretion. *Hensley*, 461 U.S. at 436–37. The Court exercises its "discretion in making this equitable judgment" and does not "apportion the fee award mechanically" by considering each

claimed expense and determining its reasonableness overall. *Id.* at 437–40 (holding that the court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained").

Here, counsel for Plaintiffs states that the attorneys' fees, which "were necessarily incurred in the litigation of this matter," and were "reasonable both as to the rate and the amount of time expended," total $9,942.80 (ECF No. 17, ¶¶ 11–12; *see* ECF No. 17-2, ¶¶ 2–3). The Court has reviewed counsel's Affidavit in Support of Motion for Attorney's Fees, which indicates an hourly rate between $280–290 for his own labor and $112 for his paralegal's labor, as well as the attachments to the affidavit, which detail the nature and duration of the work performed in this matter (ECF No. 17-2). Based on these documents, the Court finds counsel's hourly rate to be reasonable in this market, and that the time spent on this matter was reasonably necessary to obtain the result. *See Hensley*, 461 U.S. at 437–40. Accordingly, the Court awards $9,942.80 in attorney's fees.

Furthermore, counsel for Plaintiffs states that their costs in this action, "including the filing fee and fees for service of process," total $673.25 (ECF No. 17, ¶ 13; *see* ECF No. 17-2, ¶ 5). The Court finds that counsel's costs in this matter were reasonable, and awards $673.25 accordingly.

In total, the Court will enter judgment against Defendant Teter for $10,166.05 in attorney's fees and costs.

\* \* \*

## IV.  CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's Motion for Default Judgment (ECF No. 9), GRANTS Plaintiff's Motion for Attorneys' Fees and Costs (ECF No. 17), and ORDERS that:

1. Default judgment enter against Defendant in the amount of $79,660.94, consisting of:

   a. Unpaid contributions for June through October 2022 in the amount of $58,459.40;

   b. Interest on unpaid contributions in the amount of $3,276.51;

   c. Liquidated damages in the amount of $7,758.98; and

   d. Reasonable attorney's fees and costs in the amount of $10,166.05.

2. The Clerk of the Court is directed to enter final judgment in favor of Plaintiffs and against Defendant in the amount of $79,660.94.

DATED this 5th day of June 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge